UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KENNETH SCHMIDT<br><br>Plaintiff,<br><br>v.<br><br>METALCRAFT OF MAYVILLE, INC.<br><br>Defendant. | Case No. 2:19-cv-0209-LA |

**DEFENDANT'S MEMORADUM OF LAW IN SUPPORT OF
MOTION FOR COSTS AND ATTORNEYS FEES PURSUANT TO RULE 11**

**INTRODUCTION**

This case originally began before the Wisconsin Department of Workforce Development Equal Rights Division ("ERD"). Kenneth Schmidt ("Plaintiff" or "Mr. Schmidt") filed his charge of disability discrimination under the Wisconsin Fair Employment Act with the ERD on January 23, 2017. After the filing of this charge, the parties engaged in extensive discovery including multiple written discovery requests from each party, upwards of seven depositions, and the exchange of hundreds of pages of documents. After completion of this extensive discovery process, Plaintiff knew or should have known of all facts surrounding the dispute. Plaintiff ultimately voluntarily withdrew his charge before the ERD on the date of the scheduled trial. Despite having knowledge of all of the facts surrounding the dispute, Plaintiff realleged the same facts and causes of action by filing the Complaint on February 8, 2019, which initiated this case. *See* ECF No. 1.

1

On April 9, 2019, Defendant served Plaintiff with a copy of its 21-day "safe harbor" letter and an advance copy of this Motion in compliance with Rule 11 of the Federal Rules of Civil Procedure. *See* Exhibit A. This led to Plaintiff amending his Complaint on May 3, 2019 to remove his claims that Metalcraft of Mayville, Inc. ("Defendant" or "Metalcraft") violated Section 504 of the Rehabilitation Act of 1973 because Defendant is neither a government agency nor receives federal financial assistance. *See* ECF No. 14. However, the disability discrimination charges under the Americans with Disabilities Act, 42 U.S.C. § 12203 *et seq.*, as amended by the ADA Amendment Act of 2008 ("ADAAA") persisted along with the cause of action for punitive damages. *Id*. at ¶ 26, 28. Even after the extensive discovery engaged in by the parties during the proceeding of the ERD charge, the parties engaged in additional written discovery in the present case. After such extensive discovery and a safe harbor letter and copy of the Rule 11 motion identifying the deficiencies in Plaintiff's Complaint, Plaintiff knew or should have known at all times thereafter, there was and has been, no proper purpose, no basis in fact, and no basis in law for Plaintiff's claims.

## Rule 11 Standard

Rule 11(b) of the Federal Rules of Civil Procedure ("Rule 11") states:

> **Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> 1. It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> 2. The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> 3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> 4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Rule 11(c) provides in part:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

"The central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), superseded by statute on other grounds; *see also Jimenez v. Madison Area Technical College*, 321 F.3d 652, 656 (7th Cir. 2003). Compensation is "another important objective and purpose for Rule 11." *Brandt v. Schaf Associates, Inc.*, 960 F.2d 640, 646 (7th Cir. 1992). Careless and reckless lawyers should have costs imposed against them and ensures that one party does not foist expenses off onto its adversaries. *Id*. Rule 11 is designed to be punitive in nature. *Id*. at 645.

Rule 11 imposes a duty on attorneys to certify that they have conducted reasonable inquiry and have determined that the papers filed with the court are well grounded in fact, legally tenable, and not asserted for any improper purpose. The sanctions of Rule 11 provide courts be "engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). Rule 11 imposes an objective standard of reasonableness on a party or lawyer. *Id*. at 885. As the Seventh Circuit has explained, the Rule "[leaves] no room for an 'empty head, pure heart' defense." *Id*. Additionally, under Rule 11, the law firm is "jointly responsible for violations committed by its partners associates and employees." Rule 11(c)(1).

# Argument

**I.    Plaintiff's Allegations and Other Factual Contentions Lacked Evidentiary Support and the Claims and Other Legal Contentions Therein Were Not Warranted By Existing Law or By a Nonfrivolous Argument For the Extension, Modification, or Reversal of Existing Law or the Establishment of New Law.**

Plaintiff's allegations and other factual contentions lacked evidentiary support and the claims and other legal contentions therein were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. Plaintiff asserted that he was discriminated against under the ADAAA because he was a qualified individual and Metalcraft denied him employment because of his disabilities. *See* ECF No. 14 at ¶ 26. Plaintiff further asserted that he is entitled to Punitive Damages because Metalcraft's conduct was "undertaken in wanton, willful and reckless disregard of the plaintiff's rights under the ADAAA, thereby entitling plaintiff to an award of punitive damages." ECF No. 14 at ¶ 28.

There is no factual or legal basis to support any of these allegations. Plaintiff and his counsel knew or should have known he is not protected under the ADAAA because he is unqualified for the positions for which he applied. In or around July 2014, Plaintiff provided Metalcraft with a copy of his medical restrictions dated July 7, 2014 which stated that he could not stand, bend, stoop, twist, walk, climb stairs or ladders for any part of the day. *See* Exhibit B. These restrictions additionally stated he could not perform any lifting or carrying. *Id*. Even when Plaintiff received his updated restrictions on August 5, 2016, the restrictions on lifting or carrying did not change and Plaintiff continued to be restricted from lifting or carrying. *See* Exhibit C. Dr. Buboltz stated in his deposition that Plaintiff could not perform any lifting or carrying because of the Crow walker boot which Plaintiff was required to use. Buboltz Dep. 79. Plaintiff alleged that he could perform the essential functions of all the positions he applied for with use of the Crow walker boot.

*See* ECF No. 26 ¶ 15-16. All of the positions that Plaintiff applied for required regularly lifting 25 pounds and at times up to 55 pounds for six to eight hours of the shift. *See* Exhibit D. Judge Adelman stated in his opinion:

> On August 5, 2016, Dr. Buboltz signed a new fitness-for-duty form. In this new form, Dr. Buboltz indicated that the plaintiff could stand, walk, and perform other physical tasks other than lifting for up to eight hours a day. *See* ECF No. 24-3 at p. 74 of 98. In an area of the form that asked, "may not perform any lifting/carrying," Dr. Buboltz answered "yes." *Id*. Dr. Buboltz also specified that the plaintiff was required to wear an orthotic boot to protect his foot while he worked.

ECF No. 34 at 3. Plaintiff and his counsel knew or should have known that Plaintiff was restricted from lifting or carrying on or about August 5, 2016 and knew or should have known that all of the positions for which Plaintiff applied required regular lifting or carrying when Plaintiff applied for the positions by viewing the job descriptions on the application website on July 13, 2016 and January 12, 2017, well before signing and filing the Amended Complaint on May 3, 2019.

Additionally, Dr. Buboltz and Dr. Striet both stated they would not medically recommend Plaintiff work in any of the positions Plaintiff applied for with the Crow walker boot. Buboltz Dep. 82-83; Streit Dep. 29-30. Dr. Striet stated that it would not be medically advisable for Plaintiff to use the Crow walker boot without the kneeling scooter and that using a Crow walker boot is cumbersome, inefficient, and could create a safety risk to the employee. Striet Dep. 47-48. She continued that if she was aware Plaintiff was walking around in the Crow walker boot without the kneeling scooter, she would have told him to stop. Striet Dep. 36. Plaintiff wholly failed to assert any existing law or advocate for an extension, modification, or reversal of existing law or establishment of new law requiring Metalcraft to disregard Plaintiff's doctor's medical recommendations and hire him anyway. Judge Adelman noted as much in his opinion by stating:

> The parties seem to agree that the plaintiff was physically capable of performing the positions he applied for while wearing the CROW boot. Indeed, as far as the record reveals,

5

> the plaintiff's foot ulcer did not inherently prevent him from standing, walking, or lifting as much as he liked. However, standing, walking, and performing other tasks that involved putting pressure on the foot were not medically recommended. In order to prevent his foot ulcer from worsening, the plaintiff was required to "offload" pressure from his foot by wearing the CROW boot and employing other strategies, such as using a kneeling scooter. *See* Striet Dep. at 15. From some of the evidence in the record, it appears that the plaintiff may have been willing to work without offloading his foot as recommended by his doctors. However, I do not understand the plaintiff to be claiming that the ADA required Metalcraft to allow him to ignore his doctors' advice and perform work while not properly offloading his foot.
> . . .
> The plaintiff has not submitted evidence indicating that he could have performed the essential functions of the positions while properly caring for his foot ulcer. He does not, for example, offer testimony from another medical expert or a vocational expert indicating that he could have safely performed the jobs while using a CROW boot but not a kneeling scooter.

ECF No. 34 at 8, 11. In fact, existing law states that an employee is not a qualified individual if performance of the job duties poses a direct threat to the health and safety of other employees or himself. 42 U.S.C.A. § 12113(b); *see also Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 74 (2002), *E.E.O.C. v. Schneider Nat., Inc.*, 481 F.3d 507, 510 (7th Cir. 2007). Plaintiff and his attorney knew or should have known of these facts on or about July 23, 2018 and August 9, 2018 when the depositions of Dr. Buboltz and Dr. Striet were taken, well before signing and filing the Amended Complaint on May 3, 2019.

Moreover, Plaintiff asserts as part of his claim that he was discriminated against in his application for Production Helper position on July 13, 2016. ECF No. 14 at ¶ 16. However, Plaintiff did not receive his updated restrictions from Dr. Buboltz until August 5, 2016. *See* Exhibit C. Therefore, at the time of this application, Plaintiff continued to be confined by the medical restrictions dated July 7, 2014 which stated that he could not stand, bend, stoop, twist, walk, climb stairs or ladders for any part of the day and could not lift or carry at all, making him wholly unqualified to perform any job at Metalcraft. *See* Exhibit B. Plaintiff knew or should have known of these facts on or about July 13, 2016 when he submitted this application and Plaintiff's counsel

knew or should have known of these facts at least before he filed the ERD charge on January 23, 2017, well before signing and filing the Amended Complaint on May 3, 2019.

Further, Plaintiff made the decision to have a portion of his left leg amputated below the knee on April 28, 2017, merely 4 and a half months after his applications on January 12, 2017, and the amputation procedure was completed on May 24, 2017. Striet Dep. 32-33; ECF No. 14 at ¶ 7. Thus, Plaintiff and his counsel knew or should have known that he could not have performed the essential functions of the positions he applied for while his condition was continuously deteriorating to the point where his leg required amputation. Plaintiff and his attorney knew or should have known of these facts on or about April 28, 2017 or May 24, 2017, well before signing and filing the Amended Complaint on May 3, 2019.

Lastly, there is no support or evidence for the contention that Metalcraft's failure to hire Plaintiff for the positions for which he applied is willful, wanton, or in disregard of the law. Metalcraft only had the information provided to it by Plaintiff and Plaintiff failed to provide any new information that may have caused Metalcraft to reevaluate its original decision to lay Plaintiff off in August 2014. Even assuming Metalcraft was presented with the August 5, 2016 updated restrictions with Plaintiff's application, Plaintiff continued to be unqualified for the positions for which he applied, and which are the subject of this case. Judge Adelman agreed, stating:

> [T]he plaintiff contends that, based on the fitness-for-duty form that Dr. Buboltz completed on August 5, 2016, the plaintiff was cleared to perform the essential functions of the positions he applied for while using an orthotic boot. However, the form stated that the plaintiff could not do any lifting, and lifting was an essential function of each of the three positions he applied for. *See* ECF No. 24-3 at 63-72. But even putting this problem aside, the form would not allow a reasonable jury to find that the plaintiff could safely perform the jobs. At his deposition, Dr. Buboltz clarified that, when he eased the plaintiff's restrictions, he did so reluctantly and thought that it was not "in the best interest of his ulcer." Buboltz Dep. at 77:15-78:8. Dr. Buboltz reasoned that because the plaintiff was walking around a fair amount outside of work, then perhaps he could also do so while

7

> working. *Id*. But only three days after issuing the eased restrictions, Dr. Buboltz wrote a letter stating that the plaintiff could return to work provided that he use a Cam Walker Boot and a kneeling scooter. Def. PFOF ¶ 38 & ECF No. 24-3 at p. 76. Although a Cam boot is different from a CROW boot, the letter did not indicate that the plaintiff could work for eight hours a day while using a CROW boot alone. Further, as noted, once Dr. Buboltz saw video footage of the tasks the plaintiff would be required to perform, he made clear that the plaintiff's performing those jobs for eight hours a day while using only a CROW boot would have been against his recommendations. A jury considering this evidence could not reasonably conclude that the plaintiff could have performed the essential functions of the jobs he applied for while properly caring for his foot ulcer.

ECF No. 34 at 12. Thus, there is no basis in law or fact to believe that Metalcraft engaged in conduct that was willful, wanton, or in disregard of the law.

**Conclusion**

Plaintiff and his counsel knew or should have known that he is not protected under the ADAAA because the law requires he be a qualified individual. Plaintiff and his counsel provided no evidence to support Plaintiff's assertion that he is a qualified individual under the ADAAA and Plaintiff's lawsuit is without any reasonable basis in law and cannot be supported by a good faith argument for an extension, modification or reversal of existing law. All of the causes of action detailed above are baseless and fail as a matter law and lack any evidence to form any basis of fact. Because Plaintiffs' counsel signed, certified, and filed the Complaint in violation of Rule 11 of the Federal Rules of Civil Procedure set forth herein, Defendant seeks sanctions, including but not limited to costs and attorneys' fees they have been forced to incur in defending against Plaintiff's claims in the above-entitled action. Therefore, Defendants respectfully request that this Court grant the Defendant's Motion and that it be awarded all appropriate sanctions, including but not limited to, those attorneys' fees and costs it has incurred in defending against Plaintiffs' improper and baseless claims.

**RESPECTFULLY SUBMITTED:**

Dated December 1, 2020.

/s/ Deborah A. Krukowski
Deborah A. Krukowski, Esq.
State Bar No. 1022409
Krukowski Law Group, S.C.
9875 W. Woelfel Rd.
Franklin, WI 53132
dkrukowski@krulawgroup.com
414-333-0032

Attorney for Defendant
Metalcraft of Mayville, Inc.
