UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENNETH SCHMIDT

        Plaintiff,

-vs-                                                  Case No: 19-cv-209-LA

METALCRAFT OF MAYVILLE, INC.

        Defendant.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's attorney has filed a motion asking for sanctions against Plaintiff's attorney for filing a frivolous action. The action was not frivolous. It was based on a reasonable interpretation of the law and factual record of the case that the Plaintiff presented viable claims under the Americans with Disabilities Act. Defendant's motion also fails to substantially comply with the "safe harbor" notice provisions under Rule 11. Defendant's motion also is untimely. For these reasons, as set forth and described below, Plaintiff Kenneth Schmidt and his attorneys, Fox & Fox, S.C. and Attorney Peter J. Fox, respectfully requests that the Court deny Defendant's Motion for Costs and Attorney Fees under Rule 11 of the Federal Rules of Civil Procedure.

### PROCEDURAL BACKGROUND

This case was originally filed with the Wisconsin Equal Rights Division ("ERD") on January 23, 2017, identifying four positions for which Plaintiff Ken Schmidt applied and alleging that the Defendant did not hire him or consider him for hire due to his disabilities and in retaliation for his prior EEOC complaint. On August 31, 2017, the ERD issued an Initial

Determination of Probable Cause on Mr. Schmidt's claim that the Defendant refused to hire or employ him because of his disability. In that Initial Determination, Equal Rights Officer Jenna Konruff wrote:

> "The evidence in this case shows that the Respondent refused to hire the Complainant because of his disability. It is reasonable to believe that the Complainant applied for the new positions because he believed that he was qualified and able to perform the positions. The Respondent admits that it did not even consider the Complainant for the new positions that he applied for due to its reliance on his 2 ½-year-old disability restrictions. The Respondent's unwarranted assumption about the Complainant's outdated restrictions clearly affected the Respondent's hiring decision and gives reason to believe that the Respondent may have violated the Wisconsin Fair Employment Law."

(Fox Affidavit, Exhibit 1, Initial Determination, §VI, ¶C, August 31, 2017).

After discovery was completed in the underlying ERD case, and before proceeding with a Hearing on the Merits, the Plaintiff elected to withdraw from the ERD and pursue his remedies through a federal action. The present case was filed on February 8, 2019 (Dkt. 1).

On April 9, 2019, before any additional discovery was completed, Defendant's attorney served a "safe harbor" letter on Plaintiff's attorney, expressing that sanctions were warranted because:

- The complaint was barred by the statute of limitations;
- The positions that Schmidt applied for had already been filled by the time he applied;
- Schmidt's physicians had testified that he would have been unable to perform the positions;
- Schmidt and his attorney refused to provide medical information and were the reason for a "complete breakdown of any possible interactive process."
- Defendant is not subject to the Rehabilitation Act.

(Fox Affidavit, Exhibit 2, Krukowski letter April 9, 2019).

On April 22, 2019, Schmidt's attorney responded to the "safe harbor" letter, addressing each of the points raised by Defendant's attorney, specifically that:

- Schmidt's claims allege discrete discriminatory acts that were filed within 300 days of his non-selection for the applied-for-positions;
- Schmidt and his physician testified that Schmidt could perform the positions using the CROW walker boot;
- Schmidt signed authorizations allowing Defendant's counsel to obtain medical records from every provider from which he has received medical treatment; and
- That as a federal contractor, it is believed that the Defendant is subject to claims under the Rehabilitation Act, but that in the interests of simplifying the case, that claim would be dismissed, and it was. (Dkt.14, Amended Complaint).

The letter also expresses that "I am willing to meet to discuss, as your letter invites me to do. Once you have had an opportunity to review this letter, please contact me to schedule if you are still interested in meeting." (Fox Aff., Exhibit 3, Fox letter April 22, 2019). Defendant's attorney did not respond or otherwise raise the issue of Rule 11 sanctions again until the present motion was filed.

Fifteen months later, on July 10, 20202, Defendant moved for summary judgment alleging that Schmidt's claims were untimely and that Schmidt was unqualified for the applied-for-positions under the Americans with Disabilities Act. (Dkt. 24). On September 3, 2020, the Court ruled that Schmidt's claims were timely. (Dkt. 33, p. 6). But the Court granted summary judgment on the basis that Schmidt could not, "consistently with his doctors' advice, perform the functions of the positions while wearing a CROW boot." (Dkt. 33, pp. 9-12). Judgment was entered on September 3, 2020. (Dkt. 34).

Ninety days later, on December 2, 2020, Defendant filed the present motion requesting sanctions against Plaintiff's attorney. (Dkt. 35).

## FACTUAL BACKGROUND

The facts of this case were extensively briefed at summary judgment. However, several factual issues merit additional attention in evaluating Defendant's safe harbor letter and safe harbor motion as well as the actual motion filed with the Court.

First, in its safe harbor letter, in support of the contention that Schmidt was unqualified for the positions, Defendant's counsel stated that "both Mr. Schmidt and his physicians have already testified in the ERD proceedings that he would have been physically unable to complete all of the essential functions of the positions to which he applied." (Fox Aff. Ex. 2, Krukowski letter April 9, 2019). Neither Schmidt nor his physicians offered such testimony. The lone support articulated by Defendant's counsel was that "all of the positions to which Mr. Schmidt applied required lifting 25 to 35 pounds 6 to 8 hours of the shift and is a substantial function of the job." (Fox Aff., Ex. 2, Krukowski letter April 9, 2019). This assertion, too, was inconsistent with the record.

Schmidt's physician, Dr. Buboltz, did not testify that Schmidt could not perform the jobs for which he applied. After viewing video of the three jobs, Dr. Buboltz testified that Schmidt could perform the duties of the assembler position while wearing the CROW walker boot (Fox Aff., Exhibit 4, Buboltz Dep. pp. 80:22-81:4), that he could perform the duties of the robotic welder position while wearing the CROW walker boot (*Id.*, Buboltz Dep., p. 81:5-11), and that he could perform the duties of the production helper position while wearing the CROW walker boot. (*Id.*, Buboltz Dep., p. 81:12-15). These confirmations of Schmidt's ability to perform the duties were made after acknowledging that the positions required regular lifting. (*Id.*, Buboltz

Dep., pp. 66:2-8, 67:1-2, 69:18-19, 72:19-22). Dr. Buboltz also offered clarifying testimony to his August 2016 return to work form, stating that Schmidt was not restricted from lifting objects (*Id.*, Buboltz Dep., p. 79:6-11), and that he instructed Schmidt to "use his best judgment" when jobs required him to lift objects. (*Id.*, Buboltz Dep., pp. 136:19-25, 137:2-10, 137:23-138:3). Nowhere in Dr. Buboltz's deposition did he testify that Schmidt could not lift objects, nor did he put any weight limit on Schmidt's lifting abilities.

Second, Schmidt believed he could perform the jobs without accommodation and had been performing the same tasks for a different employer at the time of his applications. (Fox Aff., Ex. 5, Schmidt Dep. Tr., pp: 23:10-24:4; Dkt. 27, Schmidt Aff., 8/4/20, ¶¶ 9, 11). While Dr. Striet testified that she would not have recommended Schmidt perform the jobs as of January 2017 when she started treating him, she did testify that Schmidt could physically perform jobs where he would be standing up and moving and bending while using the CROW boot and that a person wearing a CROW boot could perform the duties of the production helper, assembler and robotic welder positions. (Fox Aff., Ex. 6, Striet Dep. Tr., pp. 39:13-42:12). In its Order on summary judgment, the Court found persuasive Dr. Buboltz's testimony that "he would not have recommended that the plaintiff work in any of the three positions for eight hours a day while using only a CROW boot." (Dkt. 33, p. 11). However, the question to which Dr. Buboltz provided this answer must be considered:

> "And so with everything you know about your patient Kenny, would you recommend that he would be working in any one of these three positions that we saw for eight hours a day with a Crow walker boot knowing that his condition could worsen?"

(Fox Aff., Ex. 4, Buboltz Dep. Tr., pp. 82:23-83:2). Dr. Buboltz's response, thus, was to a question conditioned upon "knowing that his condition could worsen," which is not – and was not interpreted as – a recommendation made at the time Schmidt applied. After all, he had

5

completed a return to work form that removed Schmidt's restrictions and also testified that Schmidt could perform the three jobs while using the CROW walker boot. Because Schmidt was able to walk a lot more with his CROW boot and to aid Schmidt's psychological and financial health, Dr. Buboltz chose to ease his medical restrictions in August 2016. (*Id.*, Buboltz Dep. Tr., pp. 77:16-78:8).

Finally, the other factual contention in Defendant's safe harbor letter proved to be demonstrably false. In that letter, Attorney Krukowski stated "and as a second defense…let me state that many of the positions Mr. Schmidt applied for were already filled at the time of his applications." (Fox Aff., Ex. 1, Krukowski letter April 9, 2019). As a matter of fact, none of the positions were filled at the time of Schmidt's applications and Defendant continued to seek applicants for the positions after Schmidt had applied and been denied consideration. (Dkt. 26, Plaintiff's Proposed Findings of Fact ("PFOF"), ¶¶ 19, 22, 24, 26, 27, 30, 31, 33, 36, 39, 41; Fox Aff., Ex. 7, Goodrich Dep. Tr., pp. 21:20-22:7, 57:25-58:8, 59:6-10, 60:3-24, 68:6-25, 72:11-17, 73:14-22, 74:16-19, 78:3-17, 80:1-12, 80:25-81:8).

## STANDARD OF REVIEW

Under Rule 11, the Court may impose sanctions for submissions that are filed for an improper purpose or without a reasonable investigation of the facts and law necessary to support their claims. *Senese v. Chi. Area I.B. of T. Pension Fund,* 237 F.3d 819, 823 (7th Cir.2001). The rule requires an attorney and/or party to certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the allegations and other factual contentions have a legally sufficient basis to support the claim. *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998). A frivolous argument or claim is one that is "baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.,* 929

6

F.2d 1358, 1362 (9th Cir.1990) (en banc). The Seventh Circuit has endorsed the use of Rule 11 Sanctions to "discourage groundless litigation." *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers,* 802 F.2d 247, 255 (7th Cir.1986).

## ARGUMENT

*1.     Plaintiff's Claim Was Not Unreasonable, Frivolous or Vexatious*

This case involved the Plaintiff's claims that the Defendant discriminated against him by not hiring or even considering him for hire into multiple positions because of his disabilities. The positions were ones that Plaintiff had capably performed for the Defendant during his previous tenure of employment. The Defendant admitted that Plaintiff was disabled and that it did not consider him for hire because of those disabilities. Plaintiff produced evidence that the Defendant failed entirely to engage in any kind of interactive process with him when he applied for the positions. He produced evidence that he was performing the same kind of work for a different employer at the time of his applications. He produced evidence that his physician approved him to return to work without restrictions other than to wear a CROW walker boot for offloading his foot. His physician testified that he could perform each of the applied-for positions while wearing the CROW walker boot. The Court ultimately determined that this evidence was insufficient to survive defendant's summary judgment motion. But the claims were not baseless. The claims were supported by a legally and factually sufficient basis and there was a reasonable basis to believe that they could be successful.

The Plaintiff also had a legally and factually sufficient basis to request an award of punitive damages. Defendant ignored Plaintiff's multiple applications for employment based on a two-year old set of medical restrictions without following its own established process for evaluating candidates (Fox Aff. Ex. 7, Goodrich Dep. Tr., pp. 28:21-29:7, 32:2-35:20), and

7

without following Defendant's standard operating process for applicants, like Plaintiff, who self-identify as disabled. (*Id*., Goodrich Dep. Tr., pp. 40:14-41:14). Had this case proceeded to trial and a jury found liability, the jury would have been reasonable to consider this evidence warranted an award of punitive damages.

> 2. *Defendant's Motion Does Not Substantially Comply with Rule 11's Safe Harbor Provision*

"Rule 11(c)(2) provides that a motion for sanctions must be served on the opposing party, but that it cannot be filed with the court until 21 days have passed from the date of service of the motion. This 21–day window gives the offending party a 'safe harbor' within which to withdraw or correct the offending pleading." *Matrix IV, Inc. v. Am. Nat. Bank and Trust Co. of Chi .,* 649 F.3d 539, 552 (7th Cir.2011). The motion must describe the specific conduct alleged to have violated the rule. Fed.R.Civ.P 11(c)(1)(A).

On April 9, 2019, Defendant's attorney served Plaintiff's attorney with a motion that identified the following bases for Rule 11 sanctions:

1) That Plaintiff's attorney knew or should have known that the statute of limitations barred his claims (Fox Aff., Ex. 8, April 2019 Motion, ¶¶ 9-13);

2) That Plaintiff's attorney knew or should have known that the Plaintiff is not protected under the ADAAA because he was unqualified for the positions for which he applied in 2016 and 2017 due to:

- Plaintiff's 2014 medical restrictions. (*Id.* at ¶ 14);

- Dr. Buboltz's alleged testimony that Plaintiff "could not perform any lifting or carrying because of the use of the Crow walker boot." (*Id.* at ¶ 15); and

- Plaintiff refused to engage in the interactive process. (*Id.* at ¶ 16);

3) That "there is no support for the contention that Metalcraft's failure to rehire the Plaintiff" warrants an award of punitive damages. (*Id.* at ¶ 17); and

4) That Defendant is not subject to the Rehabilitation Act.

On December 2, 2020, Defendant's attorney filed a substantially revised Rule 11 motion. Abandoned was the statute of limitations argument that was soundly rejected by the Court at summary judgment and the Rehabilitation Act allegation after Plaintiff's voluntary dismissal. (Dkt. 14, Amended Complaint). However, several factual allegations were added that were not advanced in the Defendant's "safe harbor" notice. The new allegations include:

- That Plaintiff's physicians stated they would not medically recommend Plaintiff work in any of the applied-for positions with the CROW walker boot. (Dkt. 35, ¶ 7);

- That Plaintiff's July 2016 application was bound by his July 2014 restrictions, not the updated restrictions Dr. Buboltz provided in August 2016; (*Id.* at ¶ 8); and

- That Plaintiff had his left leg amputated below the knee in May 2017 and thus, should have known that he could not perform the essential functions of the positions he applied for in January 2017; (*Id.* at ¶ 9).

As described throughout this brief and in detail in the Plaintiff's summary judgment submissions, there was a legally and factually sufficient basis for the Plaintiff's claims. The Defendant's motion for sanctions should be rejected on that basis. The motion can and should also be rejected because the motion filed by the Defendant's attorney describes substantially different bases than those described in the "safe harbor" motion that the Defendant's attorney provided in April 2019. Therefore, the pending motion does not substantially comply with the notice provisions required by Rule 11, which call for a description of the specific conduct alleged to be in violation of the rule.

3. *Defendant's Motion is Unreasonably and Unnecessarily Delayed*

This sanction motion was filed by the Defendant's attorney twenty-two months after the Complaint was filed, nearly 20 months after the safe harbor letter, five months after filing a motion for summary judgment, and on the 90th day after Judgment was issued. Rather than pursue the motion by filing it shortly after the twenty-one (21) day safe harbor period, Defendant's attorney elected to wait and spend additional time and money in the discovery process and summary judgment process.

Rule 11 does not establish a deadline for sanctions motions, but the Seventh Circuit has declared that 90 days after final judgment represents "the outer parameters" for filing such motions. *Sullivan v. Hunt*, 350 F.3d 664, 666 (7th Cir. 2003). However, a motion filed within 90 days of final judgment is not automatically timely; the 90–day "limit will not necessarily protect a sanctions claim if the party bringing it has failed to do so within a reasonable amount of time." *Id*. at 666 (quoting *Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992)). When sanctions motions are appropriate, they should be filed "as soon as practicable after discovery of a Rule 11 violation." *Kaplan*, 956 F.2d at 152.

Here, the Defendant bases the entirety of its motion on facts that were in the record when the case was filed twenty two months ago. Nothing was gained by having delayed filing the motion. By waiting until the 90th day after Judgment, Defendant did not file the motion as soon as practicable; this unreasonable and unnecessary delay provides additional reason for denying the motion.

## CONCLUSION

For the reasons set forth in this brief, in the Affidavit of Peter J. Fox, and the record of this case, the Plaintiff, Kenneth Schmidt, and his attorneys, Fox & Fox, S.C. and Peter J. Fox, respectfully request that the Court deny Defendant's Rule 11 motion.

Dated at Milwaukee, Wisconsin this 11th day of December 2020.

>Respectfully submitted:
>
>FOX & FOX, S.C.
>
>s/Peter J. Fox
>
>Peter J. Fox
>SBN # 1037925
>Attorneys for Plaintiff
>124 West Broadway
>Monona, Wisconsin 53716
>Telephone: 608/258-9588
>Facsimile: 608/258-9105
>111 E. Wisconsin Ave., Ste. 1925
>Milwaukee, WI 53202
>Telephone: 414/326-3260
>Email: pfox@foxquick.com