UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENNETH SCHMIDT,
      Plaintiff,

v.                                                              Case No. 19-C-0209

METALCRAFT OF MAYVILLE, INC.,
      Defendant.

## DECISION AND ORDER

In this action, plaintiff Kenneth Schmidt alleged that defendant Metalcraft of Mayville, Inc., violated the Americans with Disabilities Act when it failed to consider his employment applications because he was disabled. On September 3, 2020, I issued an order granting the defendant's motion for summary judgment. Before me now is the defendant's motion to sanction the plaintiff and his attorney under Federal Rule of Civil Procedure 11 for bringing this case. The defendant contends that the factual contentions of the amended complaint lacked evidentiary support, and that the claims presented in the complaint were not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law. *See* Fed. R. Civ. P. 11(b)(2)–(3).

### I. BACKGROUND

The plaintiff has Type 2 diabetes and, during the time period relevant to this case, suffered from a serious diabetic ulcer on his left foot. From 2000 to 2014, he worked at Metalcraft of Mayville, which manufactures and assembles products such as lawnmowers. During his tenure with the company, the plaintiff worked as a laborer in various aspects of the manufacturing and assembly process. In July 2014, one of the plaintiff's doctors, Dr. Jerome Buboltz, restricted him to seated work. Metalcraft continued

to employ the plaintiff until August 14, 2014, when it determined that it had no work that he could perform with his medical restrictions. On January 21, 2016, the plaintiff filed a charge of disability discrimination relating to his termination. That charge was dismissed as untimely. The plaintiff did not challenge his 2014 termination in this lawsuit.

In July 2016, the plaintiff reapplied for an open position at Metalcraft. Metalcraft did not consider him for this position because, based on Dr. Buboltz's medical restrictions from July 2014, which Metalcraft still had on file, he would not have been able to perform the essential functions of the job.

On August 5, 2016, Dr. Buboltz signed a new fitness-for-duty form. In this new form, Dr. Buboltz indicated that the plaintiff could stand, walk, and perform other physical tasks other than lifting for up to eight hours a day. *See* ECF No. 24-3 at p. 74 of 98. In an area of the form that asked, "may not perform any lifting/carrying," Dr. Buboltz answered "yes." *Id.* Dr. Buboltz also specified that the plaintiff was required to wear an orthotic boot to protect his foot while he worked. On August 8, 2016, Dr. Buboltz wrote a letter that stated as follows: "Ok to return to work on 8/8/2016 with only restriction of using Cam Walker Boot for protecting the left foot and kneeling scooter." ECF No. 24-3 at p. 76 of 98.

In January 2017, the plaintiff submitted applications to Metalcraft for open positions. Once again, Metalcraft refused to consider him for the positions because, based on the July 2014 restrictions, it believed he was limited to seated work. Metalcraft did not ask the plaintiff whether his restrictions had changed.

2

Case 2:19-cv-00209-LA   Filed 01/26/21   Page 2 of 8   Document 41

to employ the plaintiff until August 14, 2014, when it determined that it had no work that he could perform with his medical restrictions. On January 21, 2016, the plaintiff filed a charge of disability discrimination relating to his termination. That charge was dismissed as untimely. The plaintiff did not challenge his 2014 termination in this lawsuit.

In July 2016, the plaintiff reapplied for an open position at Metalcraft. Metalcraft did not consider him for this position because, based on Dr. Buboltz's medical restrictions from July 2014, which Metalcraft still had on file, he would not have been able to perform the essential functions of the job.

On August 5, 2016, Dr. Buboltz signed a new fitness-for-duty form. In this new form, Dr. Buboltz indicated that the plaintiff could stand, walk, and perform other physical tasks other than lifting for up to eight hours a day. *See* ECF No. 24-3 at p. 74 of 98. In an area of the form that asked, "may not perform any lifting/carrying," Dr. Buboltz answered "yes." *Id.* Dr. Buboltz also specified that the plaintiff was required to wear an orthotic boot to protect his foot while he worked. On August 8, 2016, Dr. Buboltz wrote a letter that stated as follows: "Ok to return to work on 8/8/2016 with only restriction of using Cam Walker Boot for protecting the left foot and kneeling scooter." ECF No. 24-3 at p. 76 of 98.

In January 2017, the plaintiff submitted applications to Metalcraft for open positions. Once again, Metalcraft refused to consider him for the positions because, based on the July 2014 restrictions, it believed he was limited to seated work. Metalcraft did not ask the plaintiff whether his restrictions had changed.

By the end of April 2017, the plaintiff's condition had worsened to the point that his leg had to be amputated below the knee. An orthopedic surgeon performed the amputation on May 24, 2017.

In 2017, the plaintiff filed a charge of discrimination relating to Metalcraft's failure to consider him for the positions he applied for in August 2016 and January 2017. During administrative proceedings before the Wisconsin Equal Rights Division ("ERD"), the parties conducted discovery, which included taking the plaintiff's deposition and the depositions of two of his doctors, Dr. Buboltz and Dr. Rebecca Striet. The plaintiff testified that he believed he would have been able to perform the essential functions of the positions he applied for even with his disability, but his doctors testified that they would not have recommended that the plaintiff perform many of the positions' functions with his foot ulcer.

In moving for summary judgment, Metalcraft argued that the plaintiff's suit was untimely and that the plaintiff was not a "qualified individual" within the meaning of the ADA because he was not capable of performing the essential functions of the positions he applied for with or without reasonable accommodation. 42 U.S.C. § 12112(a). I rejected Metalcraft's argument that the claim was untimely but agreed that the record would not have permitted a reasonable jury to find that the plaintiff could have performed the essential functions of the jobs with or without reasonable accommodation. On the second point, I determined that although the plaintiff may have been willing to perform the essential functions of the positions, the testimony of his doctors established that doing so would have been against their recommendations and likely would have caused his ulcer to worsen. I noted that the plaintiff did not contend that the ADA entitled him to perform

3

work that would have been against his doctors' recommendations, and therefore I granted summary judgment to Metalcraft.

In its Rule 11 motion, Metalcraft targets the filing of the amended complaint. It contends that the filing of this complaint, which alleges claims for disability discrimination, was frivolous because the plaintiff and his counsel knew or should have known that the allegation that the plaintiff was capable of performing the essential functions of the positions he applied for lacked evidentiary support. Additionally, Metalcraft contends that the complaint's allegation that the plaintiff was entitled to punitive damages because Metalcraft's violation was willful or reckless was frivolous.

## II. DISCUSSION

Federal Rule of Civil Procedure 11(b) requires that attorneys certify "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that their filings have adequate foundation in fact and law and lack an "improper purpose." Fed. R. Civ. P. 11(b). The rule "is principally designed to prevent baseless filings." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). If the court determines that a lawyer or party has violated Rule 11(b), "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). In the present case, Metalcraft contends that the plaintiff and his counsel violated Rule 11 by filing the amended complaint, which alleged that the plaintiff was able to perform the essential functions of the positions he applied for and that Metalcraft's refusal to consider his applications because he was disabled was an intentional or reckless violation of the ADA.

4

In arguing that the plaintiff's allegations about his ability to perform the positions' essential functions lacked evidentiary support, Metalcraft raises four points. Br. in Supp. at 4–7. First, it contends that the plaintiff's medical restrictions prevented him from lifting or carrying, which were essential functions of the jobs here applied for. However, while it is true that Dr. Buboltz's written restrictions stated that the plaintiff could not lift or carry objects, Dr. Buboltz testified at his deposition that the plaintiff could have done some lifting. He testified that he told the plaintiff that he could lift up to two grocery bags of weight and was only prohibited from "carrying heavy things like railroad ties." Buboltz Dep. at 136:19–138:3. Thus, the written medical restrictions did not prevent the plaintiff or his attorney from having a reasonable basis to allege that he was able to perform the essential function of lifting.

Second, Metalcraft contends that the deposition testimony of Drs. Buboltz and Striet establishes that he could not have safely performed the essential functions of the positions for which he applied.[1] However, while it is true that each doctor provided testimony to that effect, and although my decision to grant summary judgment was based in large part on their testimony, the testimony was not so unequivocal as to render this case frivolous. Each doctor testified that the plaintiff could have performed various aspects of the jobs for which he applied while wearing an orthotic boot. *See, e.g.*, Striet Dep. at 39:13–42:12; Buboltz Dep. at 70:23–71:17. Further, the plaintiff steadfastly believed that he could have performed the jobs in question despite his disability. *See*

---

[1] The parties took the doctors' depositions during the administrative phase of this case. Thus, the plaintiff and his counsel were aware of their testimony at the time they filed the amended complaint.

5

Schmidt Dep. at 20:3–20:22. Although I determined that this evidence was insufficient to prevent summary judgment on the issue of whether the plaintiff was a qualified individual, it still provided a reasonable basis for the amended complaint's factual allegations.

Third, Metalcraft contends that because Dr. Buboltz did not loosen the plaintiff's medical restrictions until August 5, 2016, his allegation that he was qualified for the job he applied for on July 13, 2016 lacked evidentiary support. However, it was undisputed that Metalcraft immediately rejected the plaintiff's application for this position based on the medical restrictions it had on file since 2014. Metalcraft did not even ask the plaintiff whether his medical restrictions had changed. Had it done so, the plaintiff might have been able to obtain updated restrictions from Dr. Buboltz in July. Dr. Buboltz did not testify that the plaintiff's condition had meaningfully improved between mid-July and the beginning of August such that he could not have worked under the loosened restrictions in July. Thus, the date of the formal change to the restrictions did not preclude the plaintiff from having a reasonable basis to allege that the he was able to work under the loosened restrictions in July.

Fourth, Metalcraft notes that the plaintiff performed work for a different employer that was similar to the work he would have been doing at Metalcraft, and that, during such employment, his ulcer worsened to the point that his foot had to be amputated. Metalcraft contends that this conclusively showed that the plaintiff could not have safely performed the jobs he applied for at Metalcraft, and that therefore his later allegation that he could have performed the jobs was frivolous. However, no evidence in the record conclusively established that the plaintiff could have avoided amputation had he not continued to work during the months leading up to the amputation. It is true that, in granting summary

6

judgment, I noted that the plaintiff required an amputation after doing jobs that were similar to the jobs he applied for at Metalcraft. However, I did this only to make the point that the plaintiff's having worked at those jobs was not evidence that he could have safely performed the essential functions of the jobs at Metalcraft. The amputation did not prevent the plaintiff from using other evidence to support his allegation that he could have performed the essential functions of the jobs he applied for at Mayville. Thus, the fact that the amputation occurred did not render his allegations frivolous.

Besides arguing that the plaintiff's allegation that he was a "qualified individual" lacked evidentiary support, Metalcraft argues that his allegation that it acted with intentional or reckless disregard of his rights—and thus could be liable for punitive damages—was unreasonable. However, this allegation was based on Metalcraft's having rejected the plaintiff's employment applications without first inquiring whether his medical restrictions had changed since the end of his prior employment at Metalcraft. The Wisconsin ERD noted in its initial determination that Metalcraft's "unwarranted assumption" about the outdated restrictions gave rise to reason to believe that Metalcraft violated the anti-discrimination laws. *See* Fox Aff., Ex. 1, § VI, ¶ C; ECF No. 39-1 at 4 of 4. Although it is by no means certain that such conduct by Metalcraft would have rendered it liable for punitive damages, the conduct potentially involved an intentional or reckless disregard of the plaintiff's rights and thus provided a reasonable basis for the plaintiff's allegation. Accordingly, neither the plaintiff nor his counsel violated Rule 11 by including the allegation in the amended complaint.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion for costs and attorneys' fees pursuant to Rule 11 is **DENIED**.

Dated at Milwaukee, Wisconsin, this 26th day of January, 2021.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge